UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JULIO PEREZ,

                Plaintiff,

v.

DOCCS COMMISSIONER ANTHONY
ANNUCCI, GHCF SUPERINTENDENT
GRIFFIN, GHCF MEDICAL SUPERVISOR
DR. BENTIVEGNA, GHCF MEDICAL
PROVIDER DR. SILVER, and DR. HOLDER,

                Defendants.

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/29/21

**OPINION AND ORDER**

20 CV 8069 (VB)

Copies Mailed/Faxed 11/29/21
Chambers of Vincent L. Briccetti

Briccetti, J.:

      Plaintiff Julio Perez, proceeding pro se and in forma pauperis, brings this action pursuant

to 42 U.S.C. §§ 1983 and 1985 against Acting Commissioner ("Comm'r") of the New York State

Department of Corrections and Community Supervision ("DOCCS") Anthony J. Annucci, Green

Haven Correctional Facility ("Green Haven") Superintendent ("Supt.") Thomas Griffin, Dr.

Robert V. Bentivegna, Dr. Lester Silver, and Dr. Jonathan L. Holder, each in their official and

personal capacities.  Plaintiff alleges defendants violated his Eighth Amendment rights.

      Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure.  (Doc. #19).

      For the following reasons, the motion is GRANTED.  However, plaintiff is granted leave

to file an amended complaint, as specified below.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint (Doc. #2 ("Compl.")) and draws all reasonable inferences in plaintiff's favor as summarized below.[1]

The Court liberally construes plaintiff's complaint and supporting documents as purporting to state two potential claims for medical indifference under the Eighth Amendment: (i) one arising from plaintiff's treatment following his June 4, 2018, fall and fracture to his left leg at Five Points Correctional Facility ("Five Points"), and (ii) one arising from plaintiff's treatment following his April 16, 2019, surgery on his left leg while incarcerated at Green Haven.

I.    Plaintiff's Pre-Existing Left-Leg Disabilities

According to plaintiff, he was suffering from a "disfigured left-leg" prior to his June 4, 2018, fall.[2]  (Compl. at ECF 5, 29).  "Ambulatory health progress notes" ("progress notes") recorded by Five Points medical personnel from March through June 2018 indicate plaintiff's

---

[1]    "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).  Here, plaintiff attaches several documents to his complaint, which the Court will consider: (i) medical progress reports and surgical records from March 2018 to April 2019; (ii) a November 2019 complaint against New York State intended to be filed with the New York Court of Claims; and (iii) Green Haven's September 10, 2018, response to plaintiff's July 25, 2018, grievance.

Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

[2]    In a grievance complaint dated July 23, 2018, plaintiff complained that he "came into the N.Y.S. DOCCS with disabilities that restrict[] [his] standing and walking." (Compl. at ECF 29). "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

disfigurement was identified as a "major physical disability" by medical staff. (Id. at ECF 18).

According to these progress notes, plaintiff had difficulty walking and had a permit to use a cane.

II.    Plaintiff's June 4, 2018, Fall and Fracture in Left Leg

      Plaintiff's progress notes reflect that on June 4, 2018, plaintiff slipped and fell on a wet

rag while getting out of the shower at Five Points, resulting in plaintiff's "[left] leg [being]

kicked out sideways" and leaving plaintiff "unable to ambulate [without] a cane." (Compl. at

ECF 18).   According to the progress notes, Five Points medical personnel suspected an ankle

sprain, prescribed painkillers, and ordered an x-ray "when available." (Id. at ECF 19).   An x-ray

taken on June 7, 2018, revealed a "hairline fracture of distal tibial metaphysis." (Id. at ECF 20).

Progress notes warned that "[fracture] complications in this inmate [were] to be especially

avoided" because plaintiff was "impaired at baseline." (Id. at ECF 19).   Progress notes dated

June 11–12, 2018, reflect plaintiff had limited "range of motion" and was "unable to weight

bear" on his left leg, which continued to exhibit severe swelling and tenderness. (Id. at ECF 21–

22).

      Plaintiff alleges that on June 14, 2018, he was transferred to Green Haven.

      On June 19, 2018, according to a DOCCS "Request and Report of Consultation" form,

plaintiff was referred to Dr. Jonathan Holder for a consultation to take place on August 9, 2018.

(Compl. at ECF 22).[3]   Dr. Holder noted on August 9 that there was "no obvious fx [fracture]

seen," but plaintiff's leg nevertheless suffered from a 22 degrees "varus deformity," also known

---

[3]    Plaintiff's supporting documents reflect that despite already being scheduled for an
August 2018 consultation with Dr. Holder, plaintiff filed an inmate grievance on July 23, 2018,
requesting to "see an orthopedist . . . for a proper consult and diagnosis of my injury." (Compl.
at ECF 29).   By the time the superintendent responded on September 10, 2018, plaintiff had
already visited Dr. Holder on August 9, 2018, as scheduled.

as having bowleg, with limited to no range of motion. (See id.). Dr. Holder's notes indicate he ordered an additional CT scan of the fracture, and instructed plaintiff to "DC crutches + replace w/ cane 1 year," and to use an "ACE wrap." (See id.).

III.   Plaintiff's April 16, 2019, Surgery

Plaintiff's medical records reflect that he was admitted to the Montefiore Mount Vernon Hospital on April 16, 2019, for a surgery performed by Dr. Holder to address a "left tibial bone cyst" in plaintiff's left leg. (Compl. at ECF 23). Plaintiff was discharged the day of the surgery, with instructions from Dr. Holder to manage his dressing and use canes and crutches.

Plaintiff also attaches to his complaint another complaint, notarized November 22, 2019, against the State of New York in the New York State Court of Claims. It is not clear if plaintiff filed that complaint. That complaint alleges the State denied him "necessary and meaningful medical care by" coordinating "meaningless medical trips" instead of ordering a "corrective surgery to repair the damage allegedly caused by the state agent's previous, or initial surgical operation." (Compl. at ECF 13). According to plaintiff, the State's failure to provide a second surgery left him with the potential alternative of "allowing the deterioration of unhealed wound from initial broken bones which admittedly were not even correctively set and has caused deformation of left leg." (Id. at ECF 16). Plaintiff appears to characterize the State as harboring "intentions" to deny an expensive, yet corrective surgery "in favor of a probable amputation." (Id.)

In the instant complaint, plaintiff further alleges that "on or about September 15, 2020, plaintiff experienced reoccurring pain in his groin area," including "increased pain in his disfigured left leg—where the bones are severely misshapen resulting in the left leg being bent and bow-curled," and "the left leg length increased by extraordinary disproportion." (Compl. at

ECF 5).  According to plaintiff, despite being aware of plaintiff's condition as depicted by an "x-ray show[ing] the break was inadequate" (id. at ECF 8), defendants "failed to mitigate the injury with timely, likely re-setting of broken bones," and "collectively declined to recommend plaintiff receive necessary operation, to re-set, previously wrongfully set bone[s] while in the custody and care of DOCCS." (Id. at ECF 6).  Plaintiff claims defendants' response to his injury "fail[ed] to meet standards for acceptable medical care." (Id. at ECF 8).

Plaintiff further alleges "all parties have stressed" it would "be too expensive" to "repair" plaintiff's injury. (Compl. at ECF 5).  Plaintiff further alleges Dr. Holder told plaintiff "the time and expense to repair plaintiff's injury would be too expensive and time consuming for his services." (Id. at ECF 6).

## DISCUSSION

I.  <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.    Eighth Amendment Claims

Defendants argue plaintiff fails plausibly to state a claim for constitutionally inadequate medical care under the Eighth Amendment.

The Court agrees.

A.    Legal Standard

To state a claim for deliberate indifference to serious medical needs, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has an objective prong and a mens rea prong: a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

6

The objective prong has two subparts.  First, a plaintiff must adequately plead he "was actually deprived of adequate medical care."  Salahuddin v. Goord, 467 F.3d at 279.  Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "'to take reasonable measures' in response to a medical condition."  Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).  Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious."  Id. at 280.  Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  Id.  If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious."  Id.  "Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain."  Id.

The mens rea prong requires a showing that defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm.  Salahuddin v. Goord, 467 F.3d at 280.  "[T]he charged official must act with a sufficiently culpable state of mind."  Id.  "To satisfy this prong of the deliberate indifference test, a plaintiff must allege only that the defendant was 'aware of facts' from which one could infer that 'a substantial risk of serious harm' existed, and that the defendant actually drew that inference."  Dotson v. Fischer, 613 F. App'x 35, 38–39 (2d Cir. 2015) (summary order).[4]

---

[4]      Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

B.    Personal Involvement

To adequately plead a Section 1983 claim, a plaintiff must also "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. The complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). A plaintiff cannot "lump[ ] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." Id. Moreover, "there's no special rule of liability for supervisors," as "[t]he violation must be established against the supervisory official directly." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020).

C.    Application

1.    Comm'r Annucci, Supt. Griffin, Dr. Bentivegna, and Dr. Silver

Here, plaintiff fails to plead the personal involvement of defendants Annucci, Griffin, Bentivegna, or Silver in either alleged deprivation of plaintiff's medical care. Plaintiff merely "lumps [these] defendants together" into conclusory, catchall allegations, such as that "all parties are alleged liable" for plaintiff's injury (Compl. at ECF 7) and that defendants "collectively declined to recommend plaintiff to receive [a] necessary operation." (Id. at ECF 6). Indeed, outside of its caption, the complaint "does not even mention any of the defendants by name in the factual allegations contained in the [c]omplaint," aside from Dr. Holder. See Perez v. Semple, 2018 WL 6435651, at *3 (D. Conn. Dec. 7, 2018) (dismissing deliberate-indifference cause of action for failure to allege personal involvement).

Several documents attached to the complaint reference Dr. Bentivegna and Griffin, but they do not, standing alone, supply sufficient facts to infer the type of personal involvement

necessary to withstand a motion to dismiss.  The DOCCS "Request and Report of Consultation" form reflecting Green Haven's referral of plaintiff to Dr. Holder states that the referral was "reviewed" by Dr. Bentivegna.  (Compl. at 22).  But merely reviewing plaintiff's referral form, without any additional facts regarding Dr. Bentivegna's role in making decisions regarding plaintiff's medical care does not give rise to a medical-indifference cause of action under the Eighth Amendment.

With respect to Supt. Griffin, plaintiff attaches a September 10, 2018, denial of a grievance regarding his request to "see an [o]rthopedist . . . for a proper consult and diagnos[is] of [his] injury."  (Compl. at ECF 28–29).  The denial, which has an illegible signature in the "Superintendent's Signature" box, stated the facility's "Nurse Administrator" had reviewed plaintiff's documents and confirmed that "[t]he grievant had a recent appointment and should return to sick call for additional issues."  (Id. at ECF 28).  Even assuming the signature on the grievance denial belongs to Supt. Griffin, the denial itself merely reflects that Griffin deferred his decision to the results of the investigation of a medical professional, and thus does not establish personal involvement in the denial of plaintiff's medical care.  See Crosby v. Petermann, 2020 WL 1434932, at *10 (S.D.N.Y. Mar. 24, 2020) (dismissing medical-indifference cause of action when defendant superintendent deferred his grievance response to nurse administrator).

The Court has not identified any reference to Comm'r Annucci or Dr. Silver in plaintiff's supporting documents.

Accordingly, plaintiff's claims against defendants Annucci, Griffin, Silver, and Bentivegna, in both their individual and official capacities, fail for lack of personal involvement.

2.    Dr. Holder[5]

Here, as discussed above, the Court infers from plaintiff's complaint two possible claims in which Dr. Holder could have been personally involved: (i) a seven-month delay in performing surgery on plaintiff's crippled bowleg following his June 2018 fall, and (ii) a refusal to perform a "corrective surgery" on plaintiff's left leg to repair unspecified complications and alleviate pain following his April 2019 surgery.  Defendant Holder argues that plaintiff fails plausibly to allege facts regarding either alleged deprivation to make out a claim for medical indifference under the Eighth Amendment.

The Court agrees, and will address each alleged deprivation in turn.

a.    Treatment Following June 4, 2018, Fall

The strongest possible inference raised by plaintiff's complaint is that Dr. Holder disregarded warnings that "[fracture] complications in [plaintiff were] to be specially avoided" due to plaintiff's disfigured left leg, by delaying a surgery to repair the fracture plaintiff suffered in his left leg on June 4, 2018.  (See Compl. at ECF 19).  Plaintiff's complaint raises the additional inference that such "complications" did, in fact, emerge as predicted, in the form of a cyst that appeared in plaintiff's left leg in the months following the fall, prompting plaintiff's surgery in April 2019.  (Id. at ECF 23).

With respect to the objective prong, these allegations, and the inferences they support, do not plausibly allege plaintiff was deprived of adequate medical care.  Indeed, the medical records

---

[5]    It is not clear from plaintiff's complaint or his supporting documents whether Dr. Holder, a private physician, was acting under the color of state law, as he must in order to be held liable under Section 1983.  Nor have defendants moved to dismiss on this issue.  Nevertheless, the Court assumes for the purpose of this motion, without deciding, that Dr. Holder was acting under color of state law.  See Bektic-Marrero v. Goldberg, 850 F. Supp. 2d 418, 427 (S.D.N.Y. 2012) ("[C]ourts in this Circuit sometimes find state action even in cases where the medical care was administered away from the prison.").

attached to plaintiff's complaint include August 2018 notes from Dr. Holder following his initial evaluation of plaintiff that clearly prescribe a regimen of treatment including: a CT scan, use of crutches and cane, a splint, and ACE wrap.  Thus, although it is clear plaintiff would have preferred different treatment, namely surgery on his left leg, "mere disagreement over the proper treatment does not create a constitutional claim."  Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

Because plaintiff fails to adequately plead the objective prong, the Court need not reach the mens rea prong.

b.    Treatment Following April 16, 2019, Surgery

With respect to the treatment of plaintiff's pain and complications following his April 2019 surgery, the strongest possible inference raised by plaintiff's complaint is that despite the same medical records stating "that "[fracture] complications in [plaintiff were] to be specially avoided" (Compl. at ECF 19), Dr. Holder refused to perform a second, "corrective surgery" to repair the damage to plaintiff's left leg allegedly caused by his first surgery.  (See id. at ECF 3). Plaintiff alleges that the delay has exacerbated plaintiff's "severe," "debilitating" disabilities and has left plaintiff "physically and permanently crippled."  (See id. at ECF 16).  Plaintiff further alleges the delay has resulted in chronic pain to plaintiff's left leg and groin and "amputation" as a potential option if the surgery is not conducted.  (See id.).  According to plaintiff, Dr. Holder denied this surgery not because it was unnecessary, but because "the time and expense to repair plaintiff's injury would be too expensive and time consuming for his services."  (Id. at ECF 6). Plaintiff alleges that Dr. Holder coordinated "meaningless medical trips" intended only to "obfuscate" his true, cost-saving motives and avoid having to order a second, necessary surgery. (Id. at ECF 13).

11

Plaintiff has again failed plausibly to allege he was deprived of adequate medical care. Nothing in plaintiff's complaint permits an inference that a second surgery was "necessary" besides plaintiff's own conclusory allegations. But plaintiff's subjective belief that he should have received more or different medical treatment for his injuries is not a sufficient basis for an Eighth Amendment deliberate-indifference-to-medical-needs claim. See Shepherd v. Powers, 2012 WL 4477241, at *6 (S.D.N.Y. Sept. 27, 2012) (dismissing medical indifference cause of action as "plaintiff has not pled any facts in support of his claim that treatment by a specialist or an M.R.I. was medically necessary"). Although plaintiff alleges Dr. Holder warned him that a second surgery would be too expensive, such an awareness would not give rise to an inference that a second surgery was necessary. Indeed, plaintiff does not allege any medical professional recommended a second surgery, much less that any medical professional stated such surgery was necessary.

Again, because plaintiff fails to adequately plead the objective prong, the Court need not reach the mens rea prong.

Accordingly, plaintiff's claims against Dr. Holder in both his individual and official capacities must be dismissed.[6]

III.   Conspiracy Claim

Defendants argue plaintiff fails to allege an actionable conspiracy claim arising under Section 1985(3), which plaintiff cites in the caption of his complaint without elaborating in the actual body.

---

[6]   Defendants also argue plaintiff's Eighth Amendment claims should be dismissed on qualified immunity grounds, as well for a failure to exhaust his administrative remedies under the Prison Litigation Reform Act. The Court does not reach either argument, as plaintiff fails outright to state a plausible Eighth Amendment claim against any of the defendants.

The Court agrees.

To state a conspiracy claim under Section 1985, a plaintiff must allege an underlying constitutional violation. A conspiracy claim under Section 1985 requires a plaintiff to allege:

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. . . . The conspiracy must also be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus."

Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007).

Here, plaintiff's conspiracy claim fails because plaintiff does not allege an underlying constitutional violation. Moreover, the complaint fails to state any allegations of an agreement between any of the defendants, much less a motivation of class-based bias. Accordingly, plaintiff's Section 1985 conspiracy claim must be dismissed.

IV.     State Law Claims

Construed liberally, plaintiff's complaint arguably brings state law tort claims for negligence or medical malpractice. Having dismissed plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims in plaintiff's complaint pursuant to 28 U.S.C. § 1367(c)(3).

V.      Leave to Amend

Rule 15(a)(2) of the FRCP instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a

liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Cuoco</u> <u>v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000).

Here, because a liberal reading of the complaint indicates a valid Eighth Amendment claim <u>might</u> be stated against defendants, the Court grants plaintiff leave to file an amended complaint against Dr. Holder, only—but only to replead his two deliberate-indifference-to-medical-needs claims arising out of (i) his June 2018 fall and (ii) his April 2019 surgery, to the extent plaintiff can do so clearly, concisely, truthfully, and plausibly.

To the greatest extent possible, plaintiff's amended complaint must address the deficiencies identified in this Opinion and Order, and must:

1.    Describe all relevant events, stating the facts that support plaintiff's case, including what Dr. Holder personally did or failed to do.

2.    Include a clear explanation of the specific health issues plaintiff attributes to each specific untimely or improper medical treatment, including: (i) the complications plaintiff alleges he suffered following the June 2018 fall but before undergoing surgery in April 2019; (ii) the groin pains plaintiff alleges he suffered following the April 2019 surgery; and (iii) how plaintiff's disabilities were exacerbated by the April 2019 surgery.

3.    Include any additional details explaining why Dr. Holder untimely or improperly treated him, including: (i) details regarding why Dr. Holder did not perform surgery on plaintiff until April 2019, and (ii) additional details regarding why Dr. Holder did not want to perform a second surgery following the initial surgery on April 16, 2019.

4.    Give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event, including all relevant visits with or examinations by Dr. Holder.

14

5.      Describe how Dr. Holder's acts or omissions violated plaintiff's rights, including any allegations suggesting that a surgery was recommended but disregarded.

Essentially, the body of plaintiff's amended complaint must tell the Court: who violated his federally protected rights, what facts show that his federally protected rights were violated, when such violation occurred, where such violation occurred, and why plaintiff is entitled to relief.

**Plaintiff is reminded that any factual allegation in the amended complaint must be true to the best of his knowledge, information, and belief.  See Fed. R. Civ. P. 11(b)(3). Also, the amended complaint will completely replace the complaint and its attachments. Therefore, plaintiff should include in the amended complaint all information necessary for his claim.  However, plaintiff is directed to include in his amended complaint only those facts and documents he believes plausibly support a violation of his constitutional rights.**

## CONCLUSION

The motion to dismiss is GRANTED.  However, plaintiff is granted leave to file an amended complaint as to his claim for deliberate indifference to serious medical needs against Dr. Holder in accordance with the instructions above.

Plaintiff shall file his amended complaint by no later than January 31, 2022, using the amended complaint form enclosed with this Opinion and Order.  **If plaintiff fails to file an amended complaint or seek additional time to do so by January 31, 2022, the Court will deem plaintiff to have abandoned this case, direct the Clerk to enter judgment in defendants' favor, and close the case.**

The Clerk is instructed to terminate the motion.  (Doc. #19).  The Clerk is further instructed to terminate defendants Annucci, Griffin, Bentivegna, and Silver from this action.

15

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Chambers will mail a copy of this Opinion and Order, as well as the amended complaint form, to plaintiff at the address on the docket.

Dated: November 29, 2021
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

16

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

No. _____
(To be filled out by Clerk's Office)

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

Rev. 5/6/16

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name              Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City              State              Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                             State                    Zip Code

Defendant 2:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                             State                    Zip Code

Defendant 3:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                             State                    Zip Code

Defendant 4:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                             State                    Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____
_____
_____
_____
_____
_____
_____
_____
_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____
_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____
_____
_____
_____
_____
_____
_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____          _____
Dated                                                          Plaintiff's Signature

_____          _____
First Name              Middle Initial            Last Name

_____
Prison Address

_____          _____
County, City                          State                      Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:  _____